# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

EQUITY LIFESTYLE PROPERTIES, INC.,
and **MHC OPERATING LIMITED PARTNERSHIP**,

        Plaintiffs,

    vs.                                  No. CIV 06-69 MCA/LFG

**THE CITY OF ALBUQUERQUE**, and
**THE ALBUQUERQUE CITY COUNCIL**,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the briefing [Doc. 66, 67, 68] ordered at the status conference [Doc. 59] on September 7, 2007, and the following filings: (1) *Defendant City of Albuquerque's Statement Concerning Claims Remaining After Plaintiffs' Sale of the Property at Issue* [Doc. 64] filed on September 24, 2007; (2) Plaintiff's *Motion for Leave to File Amended and Supplemented Complaint for Damages and to Dismiss DRNA from Action* [Doc. 65] filed on September 24, 2007; and (3) Plaintiff's *Request to Enter Order Granting Leave to File Amended and Supplemented Complaint for Damages* [Doc. 72] filed on October 31, 2007.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court (1) dismisses without prejudice the claims asserted in Plaintiff's original *Complaint* and in DRNA's *Counterclaim*, (2) dismisses Del Rey Neighborhood Association (DRNA) as an intervenor in this action, and

(3) grants in part and denies in part Plaintiff's motion to file an amended complaint for damages as well as Plaintiff's request to enter an order regarding same.

## I.   **BACKGROUND**

This case began in the Second Judicial District Court for the County of Bernalillo, State of New Mexico, on December 23, 2005, when Plaintiff filed its *Action to Set Aside Determination of Blight Complaint for Injunctive Relief and Notice of Appeal.* [Ex. A to Doc. 1.]  This action arose from Plaintiff's ownership of a 407-site mobile home park commonly known as the Del Rey Manufactured Housing Community (Del Rey).  The Del Rey property is the subject of an ordinance enacted by Defendants City of Albuquerque and Albuquerque City Council in December 2005, which contained findings that the property was "blighted." [Ex. 1 to Ex. A to Doc. 1.]

Plaintiff alleges that it was poised to sell the property during that time period, and that the potential sale fell through as a result of the blight ordinance and Defendants' failure to approve redevelopment plans proposed by one or more of Plaintiff's potential buyers.  The remedy sought in Plaintiff's original *Complaint* was directed at declaratory and injunctive relief to prospectively remove the alleged burdens imposed by Defendants' blight ordinance and thereby facilitate the sale of the Del Rey property to one of the previously identified buyers at a price acceptable to Plaintiff.

On January 26, 2006, Defendants removed this action to federal court based on Plaintiff's assertion of a federal question arising under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. [Doc. 1.]  In addition to the due-

process claim asserted in Count 2 of the *Complaint*, Plaintiff asserted a claim for violations of the Metropolitan Redevelopment Code (Count 1), a statutory action to set aside the designation of blight (Count 3), and an administrative appeal concerning that designation (Count 4).

Defendants City of Albuquerque and Albuquerque City Council filed their *Answer* [Doc. 3] on January 26, 2006. DRNA (which represents or consists of persons who reside on the Del Rey property) then moved to intervene as a Defendant and Counter-Claimant on February 17, 2006. [Doc. 7, 8, 9.] The Court granted DRNA's motion on July 10, 2006 [Doc. 34], and DRNA subsequently filed its *Answer* [Doc. 37] asserting a number of affirmative defenses as well as a counterclaim for a declaratory judgment upholding the validity of the findings of blight on which Defendants' ordinance is premised.

At the parties' request, the Court then stayed the proceedings for several months while Plaintiff negotiated the sale of the property to a new buyer who is not a party to this action. [Doc. 39, 40, 41, 47, 54, 55, 56, 57.] The case-management deadlines, pretrial conference, and trial date previously set by the Court in the *Initial Pretrial Report* [Doc. 23] were vacated as a result of the stay. [Doc. 55.]

Upon receiving notice that the property had in fact been sold to a third party in July 2007, the Court lifted the stay and held a status conference on September 7, 2007, to determine what, if any, claims and/or counterclaims remain pending after the sale of the property and whether DRNA had any further interest in the litigation. [Doc. 58, 59.] At the status conference, the parties disputed whether or to what extent any existing claims or

counterclaims remained pending, and Plaintiff stated that it would be seeking leave to file an amended complaint asserting new claims for damages based on the economic loss that Plaintiff allegedly suffered as a result of having to find a new buyer for the property after the blight designation and disapproval of earlier redevelopment plans.

The Court ordered the parties to brief these issues and set a deadline for Plaintiff to file its motion seeking leave for an amended complaint. [Doc. 59.] Notwithstanding the deadlines set by the Court, the parties continued filing motions and briefing the issues regarding the proposed amendment of Plaintiff's *Complaint* until December 18, 2007. The Court has considered each of the documents filed in this action as of that date.

## II.   ANALYSIS

### A.   Status of Plaintiff's Original Claims and DRNA's Counterclaim

The first question before the Court is whether the claims asserted in Plaintiff's original *Complaint* [Ex. A to Doc. 1] and DRNA's counterclaim [Doc. 37] should be dismissed as moot now that Plaintiff no longer owns the Del Rey property on which those claims are based. "Mootness, like ripeness and standing, has its constitutional origin in the 'case or controversy' limitation of Article III [of the United States Constitution] which insures that courts exercise their power only in cases where true adversary context allows informed judicial resolution." Wiley v. Nat'l Collegiate Athletic Ass'n, 612 F.2d 473, 475 (10th Cir. 1979). "Article III mootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" S. Utah Wilderness Alliance v. Smith, 110

F.3d 724, 727 (10th Cir. 1997) (quoting Arizonans For Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997)).  "A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it."  Id. (citing Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992)).

Even when it has the power to grant relief, the doctrine of "prudential mootness" calls for the Court to exercise its discretion in deciding when to use that power.  See id. Such discretion is appropriate when a controversy has become "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant."  Chamber of Commerce v. United States Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980).  "Under both Article III and prudential mootness doctrines, the central inquiry is essentially the same: have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief." Smith, 110 F.3d at 727.

In this case, Plaintiff's filings in response the status conference on September 7, 2007, continue to assert that there is some type of ongoing controversy which justifies amending the *Complaint*.  None of these recent filings, however, dispute the proposition that circumstances have changed since the beginning of the litigation, with the result that the Court is no longer in a position to provide Plaintiff with any meaningful declaratory or injunctive relief with respect to the claims asserted in the first, third, and fourth causes of action of the original *Complaint* (*i.e.*, violation of the Metropolitan Redevelopment Code, action to set aside designation of blight, and notice of appeal).  At this juncture, Plaintiff does

not have a legally cognizable property interest in the Del Rey property or any redevelopment plans proposed by its actual or potential buyers.  It follows that Plaintiff is no longer in a position to assert an injury to such a property interest which can be redressed by the Court through an injunction or declaratory judgment directed at the ordinance, its findings of blight, or the redevelopment plans for the Del Rey property.  Granting such declaratory or injunctive relief at this time would not benefit Plaintiff and might impose an unwanted burden on the new landowner.

While it is true that DRNA's membership still retains some interest in the Del Rey property and any pending redevelopment plans premised on the blight ordinance, at this juncture Plaintiff is no longer in a position to shape those redevelopment plans and thus poses no imminent threat to the interest of DRNA or its members.  In addition, Plaintiff has given no indication that it is seeking an award of damages from DRNA or its members.  In light of Plaintiff's sale of the property, the controversy which gave rise to DRNA's counterclaim for a declaratory judgment has become too attenuated to justify judicial intervention in the case at bar.  DRNA has not demonstrated that the dismissal of its counterclaim on mootness grounds would preclude it from initiating or pursuing future claims against the new landowner relating to the ordinance, findings of blight, or redevelopment plans for the property should an actual controversy arise in the future.

For these reasons, both the doctrines of Article III mootness and prudential mootness require the dismissal of the first, third, and fourth causes of action asserted in Plaintiff's

original *Complaint*, as well as DRNA's counterclaim.  Insofar as mootness implicates a lack of jurisdiction, the dismissal of these claims and the counterclaim is without prejudice.

The dismissal of the above claims and counterclaim leaves only the second cause of action in Plaintiff's original *Complaint*, which alleges a due-process violation.  The fact that Plaintiff no longer has a legally cognizable interest in the Del Rey property does not necessarily preclude such a due-process claim, for if a state actor had deprived Plaintiff of a constitutionally protected interest without due process of law, Plaintiff could still seek a remedy for that due-process violation after the deprivation occurred.

The problem here is that because Plaintiff already has sold the property to a third party, providing additional process at this juncture would not redress the asserted injury.  The Court cannot simply set aside the Defendants' decision and require everyone to start the process over from square one.  And, insofar as Plaintiff seeks an award of money damages under 42 U.S.C. § 1983 in lieu of such additional process, its due-process claim is subsumed by the takings claim that Plaintiff seeks to assert in an amended complaint.  As discussed below, the Court is granting Plaintiff leave to assert such a takings claim in an amended complaint.  For these reasons, the due-process claim in Plaintiff's original *Complaint* also is dismissed without prejudice.

**B.**  **Plaintiff's Motions Seeking Leave to File an Amended Complaint**

Having concluded that the counterclaim and all existing claims must be dismissed without prejudice at this juncture, the next question is whether Plaintiff should be granted leave to file an amended complaint which adds one or more new claims.  In its *Request to*

*Enter Order Granting Leave to File Amended and Supplemented Complaint for Damages*
[Doc. 72] filed on October 31, 2007, Plaintiff asserts that it is entitled to file its proposed
amended complaint because by that date Defendants had not yet filed their response to
Plaintiff's earlier *Motion for Leave to File Amended and Supplemented Complaint for
Damages and to Dismiss DRNA from Action* [Doc. 65] of September 24, 2007.  The reason
for Defendants' delay in filing their response, however, was that they initially misfiled the
wrong document as their response and did not recognize this clerical error until after briefing
was completed.  [Doc. 69.]  When the error was later brought to their attention, Defendants
then filed the correct document as their response.  [Doc. 75.]  (The Court also notes that
Defendants misfiled their *Statement Concerning Claims Remaining After Plaintiffs' Sale of
the Property at Issue* [Doc. 64] under the category of a "motion.")

    Without condoning Defendants' carelessness in filing the wrong document as their
initial response, the Court understands that the electronic filing process under the Case
Management/Electronic Case Filing (CM/ECF) system is relatively new to some attorneys
in this district.   Under these circumstances, Defendants' difficulty in coping with the
electronic filing process does not provide grounds for penalizing their delay.  The Court will
therefore consider the merits of the parties' arguments regarding Plaintiff's motion to amend
in lieu of issuing a ruling that is based solely on Defendants' delay in filing their response.
Similarly, the Court will terminate Defendants' *Statement Concerning Claims Remaining
After Plaintiffs' Sale of the Property at Issue* [Doc. 64] insofar as it was filed as a motion,

and instead consider that filing in the context of the briefing ordered at the status conference on September 7, 2007.

A complaint may be amended "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Thereafter, such an amendment requires leave of the Court or written consent of the adverse party. Such "leave shall be freely given when justice so requires." Id. The need to modify the scope of the pleadings to account for events that occurred after the filing of the original complaint is a permissible reason for granting leave to amend in this context, where the additional requirements of Fed. R. Civ. P. 16 and D.N.M. LR-Civ. 16.1 are not at issue because the previously established case-management deadlines already have been vacated. See Fed. R. Civ. P. 15(d); Keith v. Volpe, 858 F.2d 467, 473-74 (9th Cir. 1988).

It is within the Court's discretion, however, to deny leave to amend or supplement a pleading under Fed. R. Civ. P. 15 based upon a justifying reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see Glatt v. Chicago Park Dist., 87 F.3d 190, 194 (7th Cir. 1996) (noting that the same standard applies to both amendments under Fed. R. Civ. P. 15(a) and supplementation under Fed. R. Civ. P. 15(d)). A motion to amend or supplement a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." Jefferson

-9-

County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999).

In this case, Defendants assert that the new claims which Plaintiff seeks to add to its complaint are subject to dismissal on at least two different grounds:  failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), and lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Motions to dismiss for lack of subject matter jurisdiction under the latter rule "generally take one of two forms:  (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir.2002).  In reviewing a facial attack, the Court construes Plaintiff's pleading liberally, accepts all uncontroverted, well-pleaded factual allegations as true, and views all reasonable inferences in Plaintiff's favor.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  "In reviewing a  factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts,'" and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion.  Id. (quoting Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995)).  Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  See Fed. R. Civ. P. 41(b); Leaf v. Supreme Ct. of Wis., 979 F.2d 589, 595 (7th Cir. 1992).

If the Court has jurisdiction to hear a claim, it may nevertheless be dismissed with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The standard for determining whether a claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6) was recently clarified in  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).  A claim is subject to dismissal under this rule if it does not "possess enough heft to sho[w] that the pleader is entitled to relief."  Id. at 1966 (internal quotation marks omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965 (citation and footnote omitted).

In articulating this standard, Twombly abrogated the Supreme Court's earlier pronouncement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Twombly, 127 S. Ct. at 1968.  This language from the Conley opinion is problematic because, when read literally and in isolation, it could suggest that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a

plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Twombly, 127 S. Ct. at 1968.

The "practical significance" of such a literal reading of Conley is that it may force defendants to go through the burden and expense of conducting discovery before they are afforded their first real opportunity to seek the dismissal of groundless claims.  Id. at 1966 (citing Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005)).  Plaintiffs, in turn, may use this additional burden and expense of conducting discovery as leverage to induce an otherwise unjustified settlement of such groundless claims.  See id. at 1966-67.  To combat such abuses, the Twombly opinion emphasizes that when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. (quoting Daves v. Hawaiian Dredging Co., 114 F. Supp. 643, 645 (D. Hawaii 1953)).

In this case, Plaintiff seeks to add three new claims to its pleading:  (1) a claim seeking just compensation (or money damages) for Defendants' alleged taking of the Del Rey property; (2) a claim for damages arising from an alleged deprivation of property without due process; and (3) a claim for "appropriate relief" from Defendants' alleged interference with the contractual obligations owed to Plaintiff.  For the reasons set forth below, I determine that the second and third of these new claims would be subject to dismissal based on Twombly and the mootness principles that were previously discussed with respect to Plaintiff's original *Complaint*.

Plaintiff's third new claim arises from the contracts clauses in Article I, Section 10 of the United States Constitution and Article II, Section 19 of the New Mexico Constitution. In its motion papers, however, Plaintiff "recognizes that under Hans v. Louisiana, 134 U.S. 1 (1890) as interpreted by Alden v. Maine, 527 U.S. 706, 730 (1999), a claim for damages pursuant to the impairment of contracts clause may be barred by sovereign immunity because the Contracts Clause does not provide for claims for money damages.  See Manning v. N.M. Energy, Minerals and Natural Resources, 2006-NMSC-027, 140 N.M. 528, 144 P.3d 87." [Doc. 65, at 7.]  For this reason, claims under the contracts clauses generally are limited to the situation where a party is seeking a declaratory judgment or injunctive relief to strike down the state law which is alleged to cause interference with a contractual obligation (and thereby restore a party's rights under that contract).  See, e.g., Energy Reserves Group v. Kansas Power & Light Co., 459 U.S. 400, 408-09 (1983).  Plaintiff cites no authority to suggest that the contracts clause of the state constitution should be interpreted differently. See Maso v. State Taxation and Revenue Dep't, 2004-NMSC-028, ¶ 5, 136 N.M. 161, 96 P.3d 286 (stating requirements for raising and preserving state constitutional claims).

As noted above, striking Defendants' blight ordinance through such declaratory or injunctive relief would not redress Plaintiff's alleged injuries in this instance, because Plaintiff already has sold the Del Rey property to a third party.  Under these circumstances, striking the ordinance would not serve to restore Plaintiff's rights to the property or to resuscitate any redevelopment plans that had been agreed upon between Plaintiff and another prospective buyer.  It follows that Plaintiff's claims for declaratory or injunctive relief are

moot, regardless of whether they are brought under the contracts clauses or the other grounds previously asserted in Plaintiff's original *Complaint*.

Lacking any grounds for seeking money damages, a declaratory judgment, or injunctive relief under the contracts clauses of the state or federal constitutions, Plaintiff's claim for unspecified "appropriate relief" under these clauses is too speculative and conclusory to meet the pleading requirements of Twombly. Because it would be futile to add a claim that does not meet these pleading requirements, the Court denies Plaintiff's motion to amend in part as it relates to the contracts clauses.

The Court also concludes that it would be futile to add a procedural or substantive due-process claim because to the extent that such due-process claims are not moot, they are subsumed by the takings claim that Plaintiff also seeks to assert at this point in the litigation. The Supreme Court has recognized that the Fifth Amendment's prohibition on the taking of private property without just compensation applies to the states by virtue of the Fourteenth Amendment. See Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (citing Chicago B. & Q. R. Co. v. Chicago, 166 U.S. 226 (1897)). It follows that Plaintiff's takings claims are properly analyzed under the Supreme Court's Fifth Amendment takings jurisprudence rather than a more generalized substantive due-process framework. See Miller v. Campbell County, 945 F.2d 348, 352-53 (10th Cir. 1991). In this regard, the Supreme Court has recently distinguished its takings jurisprudence from the more generalized substantive due-process inquiry and concluded that the question whether a governmental regulation or restriction on private property advances a substantial governmental interest "has no place in

-14-

our takings jurisprudence" as a "free-standing takings test." <u>Lingle v. Chevron U.S.A. Inc.</u>, 544 U.S. 528, 540-48 (2005).

While this holding does not necessarily foreclose a substantive due-process challenge to the regulation itself, the remedy for such a challenge would be "an injunction against the enforcement of a regulation that [Plaintiff] alleges to be fundamentally arbitrary and irrational," rather than money damages or "just compensation" under the Takings Clause. <u>Id.</u> at 544. Thus, to the extent that Plaintiff seeks to assert a substantive due-process challenge that is not subsumed by its takings claim, such a challenge would be moot at this point because Plaintiff no longer has an interest in the Del Rey property which can be redressed through enjoining Defendants' ordinance.

Inasmuch as Plaintiff alleges a procedural due-process claim regarding the adequacy of the procedures which allegedly resulted in the deprivation of its interests in the Del Rey property, such a claim also is subsumed by the Court's analysis of the ripeness of his takings claims. <u>See</u> <u>Rocky Mtn. Materials & Asphalt, Inc. v. Bd. of County Comm'rs</u>, 972 F.2d 309, 311 (10th Cir. 1991); <u>J.B. Ranch, Inc. v. Grand County</u>, 958 F.2d 306, 309 (10th Cir. 1992); <u>Miller</u>, 945 F.2d at 352. "When a plaintiff alleges that he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based, we have required the plaintiff to utilize the remedies applicable to the takings claim." <u>Rocky Mtn. Materials & Asphalt, Inc.</u>, 972 F.2d at 311. In this context, "[i]t is appropriate . . . to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just

-15-

Compensation Clause."  Miller, 945 F.2d at 352 (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  "A contrary holding . . . would enable a resourceful litigant to circumvent the ripeness requirements [for a takings claim] by alleging a more generalized due process . . . violation."  Bateman v. City of West Bountiful, 89 F.3d 704, 709 (10th Cir. 1996).

For these reasons, the Court denies Plaintiff's motion to amend in part as it relates to the assertion of substantive or procedural due-process claims.  The Court will instead examine Plaintiff's due-process concerns in the context of analyzing the ripeness component of its takings claim.

There are two ripeness requirements which must be satisfied before the merits of a civil action for an unlawful taking without just compensation may be litigated in federal court.  First, Plaintiff must satisfy a *finality* requirement by demonstrating that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985); accord Bateman, 89 F.3d at 706; Miller, 945 F.2d at 352.  Second, Plaintiff also must satisfy an *exhaustion* requirement by showing that it has "sought compensation through the procedures the State has provided for doing so."  Williamson County, 473 U.S. at 194; accord Bateman, 89 F.3d at 708; Miller, 945 F.2d at 352.

With respect to the finality requirement, the Supreme Court's takings jurisprudence "uniformly reflect[s] an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit

it." McDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 351 (1986). The Supreme

Court has explained this finality requirement as follows:

> a takings claim based on a law or regulation which is alleged to go too far in
> burdening property depends upon the landowner's first having followed
> reasonable and necessary steps to allow regulatory agencies to exercise their
> full discretion in considering development plans for the property, including the
> opportunity to grant any variances or waivers allowed by law. As a general
> rule, until these ordinary processes have been followed the extent of the
> restriction on property is not known and a regulatory taking has not yet
> occurred.

Palizzolo, 533 U.S. at 620-21. Before such processes have reached their conclusion, courts

cannot determine whether a regulation goes too far in burdening property rights because they

do not yet know how far the regulation goes. See id. at 622; McDonald, Sommer & Frates,

477 U.S. at 348.

Exhaustion of state-law remedies is also an issue with respect to takings claims

because "[t]he Fifth Amendment does not proscribe the taking of property;  it proscribes

taking without just compensation." Williamson County, 473 U.S. at 194; accord Lingle, 544

U.S. at 536-37. Further, "the Fifth Amendment [does not] require that just compensation be

paid in advance of, or contemporaneously with, the taking; all that is required is that a

'reasonable, certain and adequate provision for  obtaining compensation' exist at the time of

the taking." Williamson County, 473 U.S. at 194 (quoting Regional Rail Reorganization Act

Cases, 419 U.S. 102, 124-125 (1974)).  It follows that "if a State provides an adequate

procedure for seeking just compensation, the property owner cannot claim a violation of the

Just Compensation Clause until it has used the procedure and been denied just

compensation." <u>Id.</u> at 195; <u>accord</u> <u>J.B. Ranch, Inc.</u>, 958 F.2d at 308.  Such procedures include both administrative and judicial remedies afforded by the State. <u>See, e.g.</u>, <u>Miller</u>, 945 F.2d at 352 (concluding that a federal takings claim was unripe where "the plaintiffs have pending under Wyoming law an inverse condemnation action to recover compensation for the loss of their homes"); <u>Sandy Creek Investors, Ltd. v. City of Jonestown</u>, 325 F.3d 623, 625-26 (5th Cir. 2003) (concluding that federal takings claims were unripe and remanding state-law claims to state court).

Like the doctrines of mootness and standing, a failure to meet the ripeness requirements for a takings claim may call into question this Court's subject-matter jurisdiction under Article III of the United States Constitution. <u>See</u> <u>Bateman</u>, 89 F.3d at 706; <u>J.B. Ranch, Inc.</u>, 958 F.2d at 308. Insofar as verifying its subject-matter jurisdiction is a federal court's "first duty" in every case, <u>McCready v. White</u>, 417 F.3d 700, 702 (7th Cir. 2005), the question of ripeness usually is best addressed closer to the outset of the litigation, <u>see</u> <u>Sandy Creek Investors, Ltd.</u>, 325 F.3d at 626; <u>J.B. Ranch, Inc.</u>, 958 F.2d at 308.  In any event, the Court's subject-matter jurisdiction must be established before it may independently rule on the merits of a motion for summary judgment. <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-102 (1998); <u>Sandy Creek Investors, Ltd.</u>, 325 F.3d at 626; <u>J.B. Ranch, Inc.</u>, 958 F.2d at 308.

Ordinarily, the ripeness of a takings claim may be questioned *sua sponte*, <u>see</u> <u>J.B. Ranch, Inc.</u>, 958 F.3d at 308, or by means of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), <u>see</u> <u>Bateman</u>, 89 F.3d at 706.  In either case, the

parties must be afforded adequate notice and opportunity to respond.  See Ricketts v. Midwest Nat'l Bank, 874 F.2d 1177, 1181-84 (7th Cir. 1989).

The problem here is that the Court is called upon to address the issue of ripeness with respect to a *proposed* takings claim that is identified in the briefing on a motion to amend or supplement a complaint that was filed after the litigation had been stayed for a considerable period of time.  Further, several of Defendants' assertions with respect to the ripeness of Plaintiff's proposed takings claim raise factual questions regarding what exhaustion procedures, if any, are available to Plaintiff and whether Plaintiff has pursued such procedures to the point of finality.

Under these circumstances, Plaintiff has not yet had a fair opportunity to come forward with evidence to show the ripeness of its *proposed* takings claim, and the Court may exercise its discretion to allow limited discovery or hearings in order to resolve any disputed jurisdictional facts.  See Holt, 46 F.3d at 1003.  While acknowledging that Plaintiff's proposed takings claim may be subject to dismissal for lack of ripeness at a later time after the record is further developed on this issue, the Court is not presently in a position to conclusively determine that such a claim is so futile that it would be pointless to grant Plaintiff leave to amend its pleading.  Accordingly, Defendants' ripeness arguments do not provide grounds for denying Plaintiff leave to make such an amendment at this time.

Even if Plaintiff's proposed takings claim is not subject to dismissal for lack of ripeness, Defendants also assert that such a claim would be futile because there is no conceivable set of facts under which Defendants' actions with respect to the Del Rey

-19-

property could constitute a taking.  For example, Defendants note that because Plaintiff was able to sell the Del Rey property to a third party, Plaintiff is foreclosed from arguing that any government regulation had the effect of completely depriving Plaintiff of all beneficial use of that property.

Plaintiff responds that takings requiring just compensation may occur in several other ways. See Lingle, 544 U.S. at 537-40.  "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property."  Id. at 537. The Supreme Court also has recognized a category of "regulatory takings" that may be compensable under the Fifth Amendment where government regulation is "so onerous that its effect is tantamount to a direct appropriation or ouster."  Id.   In particular, government regulation may constitute a taking *per se* where it "requires an owner to suffer a permanent physical invasion of her property," or where it "completely deprive[s] an owner of 'all economically beneficial us[e]' of her property."  Id. at 538 (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992)).  Outside of these special categories, regulatory takings are generally governed by the standards set forth in Penn Central Transp. Co. v. City of N.Y., 438 U.S. 104, 124 (1978), which depend on "a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action."  Palazzolo, 533 U.S. at 617.

In this case, one of Plaintiff's allegations is that the regulatory effect of Defendants' blight ordinance and disapproval of earlier redevelopment plans for the Del Rey property was

-20-

to deny Plaintiff the right to exclude the DRNA tenants from the property and to require the property owner to suffer a permanent physical invasion by those tenants for as long as it owned the property.  While it remains to be seen whether Plaintiff can come forward with evidence to support the assertion that Defendants' actions had such a severe effect, as a matter of law our Supreme Court has allowed takings claims to proceed on similar theories. See Lingle, 544 U.S. at 539 (collecting cases).  Further, such theories do not depend on proof that the property as a whole has lost all its value, because "[a] permanent physical invasion, however minimal the economic cost it entails, eviscerates the owner's right to exclude others from entering and using her property–perhaps the most fundamental of all property interests."  Id.  Thus, at this preliminary juncture where the Court must accept as true all well-pleaded factual allegations in the amended complaint, I am not in a position to conclude that it would be entirely futile for Plaintiff to assert a takings claim based on such a theory of physical invasion or exaction.  Accordingly, Plaintiff's motions to amend its complaint are granted in part with respect to asserting a takings claim for just compensation or money damages only.

III.   **CONCLUSION**

For the foregoing reasons, all of the claims in Plaintiff's original *Complaint*, as well as DRNA's counterclaim, are dismissed without prejudice on mootness grounds;  DRNA is dismissed as a party to this action; and Plaintiff is granted leave to file an amended complaint asserting a takings claim for just compensation or money damages only.  Plaintiff's amended complaint must be filed on or before February 15, 2008.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Leave to File Amended and Supplemented Complaint for Damages and to Dismiss DRNA from Action* [Doc. 65] is **GRANTED IN PART** with respect to the amendment of Plaintiff's *Complaint* to include a takings claim for just compensation or money damages only, and **DENIED IN PART** with respect to all other claims or relief.

**IT IS FURTHER ORDERED** that Plaintiff's *Request to Enter Order Granting Leave to File Amended and Supplemented Complaint for Damages* [Doc. 72] is **GRANTED IN PART** with respect to the amendment of Plaintiff's *Complaint* to include a takings claim for just compensation or money damages only, and **DENIED IN PART** with respect to all other claims or relief.

**IT IS FURTHER ORDERED** that Plaintiff's amended complaint must be filed on or before February 15, 2008.

**IT IS FURTHER ORDERED** that all of the claims in Plaintiff's original *Complaint*, as well as DRNA's counterclaim, are dismissed without prejudice on mootness grounds, and DRNA is dismissed as a party to this action.

**SO ORDERED** this 31st day of January, 2008, in Albuquerque, New Mexico.

_____

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**